# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1605 | **DATE** | 1/28/2002 |
| **CASE TITLE** | Smith vs. IL Secretary of State | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached memorandum opinion and order, the Court denies Smith's motion to amend relief (25-1) and denies Smith's application for a preliminary injunction (14-1). Status hearing set to 2/14/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | number of notices | Document Number |
| | Notices mailed by judge's staff. | JAN 3 0 2002 date docketed | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 28 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | JAN 3 0 2002 date mailed notice | |
| OR | courtroom deputy's initials | 02 JAN 29 PM 3:45 U.S. DISTRICT COURT CLERK Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 01 C 1605  **DOCKETED** |
| ) | |
| ILLINOIS SECRETARY OF STATE, ) | **JAN 3 0 2002** |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jonathan Smith was the victim of an identity theft. Another man somehow persuaded the Secretary of State to issue a renewal license in Smith's name, with Smith's driver's license number, social security number and birthdate, but the identity thief's picture and address. After getting the bogus license, the identity thief racked up several out-of-state traffic violations and failed to appear to remedy those violations, thereby creating numerous blemishes on Smith's driver's license record. As a result of those blemishes, effective June 9, 2000, the Secretary of State suspended Smith's license.

On February 27, 2001, Smith attempted to renew his real driver's license and was told that he could not do so because his license had been suspended. He was told that the suspension was based on out-of-state traffic violations and that to remedy the problem he would have to work through the courts of the states in which the tickets had been issued. Smith requested a hearing, consistent with the procedures established by the State of Illinois, to challenge his suspension, and the hearing was scheduled for May 2, 2001. In the meantime, Smith filed this lawsuit, alleging that the Secretary of State's procedures violated his due process rights and

seeking an injunction requiring the office to establish procedures to help the victims of identity theft. Smith's lawsuit prompted an investigation of his plight, and Secretary of State personnel worked with the various out-of-state courts to clear the tickets issued to the identity thief in Smith's name – actions the Secretary took, not as a matter of policy, but because of the pendency of this lawsuit. Eventually the Secretary issued Smith a new license but refused to change Smith's driver's license number. Ironically, shortly after Smith received his new license, the hearing officer, who heard Smith's case a few days before the license was issued, denied Smith's request to lift the suspension. The denial was based on a Tennessee ticket that had already been vacated by the Tennessee court.

Smith initially filed this lawsuit seeking an injunction requiring the Secretary of State, the agency charged with administering the state's driver's licensing system, "[t]o establish and enforce procedures to guard against the issuance of bogus driver's licenses, [t]o establish and enforce a procedure to allow victims of identity theft to regain their right to operate a motor vehicle in Illinois when that person's driver's license has been revoked, without fault of the driver, because of identity theft, and grant whatsoever other relief as may be appropriate." Amended Complaint, p. 6. After learning that the actions of Smith's identity thief had apparently created an FBI arrest record in Smith's name, which was subsequently reflected in the National Crime Information Center database managed by the FBI, Smith moved to amend his request for relief. Now, in addition to the above, he asks the Court to issue an injunction requiring the Secretary of State "to advise law enforcement agencies, including the NCIC and the FBI, that an Illinois driver's license in plaintiff's name was used, without any fault or culpability on the part of plaintiff, by an identity thief from January 9, 1998 to May 15, 2000." Motion to Amend Relief

Requested in Preliminary Injunction, p. 2.

The purpose of a preliminary injunction is to minimize the hardship to the parties pending resolution of their lawsuit. *Kiel v. City of Kenosha*, 236 F.3d 814, 816 n.4 (7th Cir.2000). To obtain a preliminary injunction Smith must demonstrate that: (1) he has a reasonable likelihood of success on the merits of his underlying claim; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm if the preliminary injunction is denied. *See Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If Smith satisfies these three conditions, the Court must then consider whether the irreparable harm Smith will suffer without injunctive relief is greater than the harm the Secretary of State will suffer if the preliminary injunction is granted. *Id.* In addition, the Court must consider whether the preliminary injunction will harm the public interest. *Id.*

The threshold factor is likelihood of success on the merits, *see Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1213 (7th Cir. 1997) (citing *O'Connor v. Board of Education of School District No. 23*, 645 F.2d 578, 580 (7th Cir.), *cert. denied*, 454 U.S. 1084 (1981)), so we begin there. A "likelihood of success" exists if the party seeking injunctive relief shows that it has a "better than negligible" chance of winning on the merits. *Meridian Mutual Insurance Co. v. Meridian Insurance Group, Inc.*, 128 F.3d 1111, 1114-15 (7th Cir. 1997); *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988). Smith claims that the Secretary of State failed to "establish[] a quick, speed, and efficient system for victims of identity theft" and that that failure "has caused and is likely to cause in the future continued deprivation of the property right to operate a motor vehicle." Amended Complaint, ¶18. In short, he claims, the Secretary of State's procedures (or lack thereof) violate

3

the Due Process Clause of the United States Constitution.

To determine whether the Due Process Clause has been violated, we first ask whether the plaintiff has been deprived of a liberty or property interest. *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999) (citing *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 387 (7th Cir. 1984) and quoting *Boucher v. School Board of Greenfield*, 134 F.3d 821, 824 (7th Cir. 1998)). Smith clearly was; it is well established that the suspension of a driver's license constitutes a deprivation of a property interest. *See, e.g., Illinois v. Batchelder*, 463 U.S. 1112, 1116 (1983) (suspension of a driver's license for statutorily defined cause implicates a protectible property interest); *Mackey v. Montrym*, 443 U.S. 1, 10 & n.7 (1979) (the Due Process Clause applies to a state's suspension or revocation of a driver's license).

We next ask "what process is due" to protect against an erroneous deprivation of that interest. *Cooper*, 196 F.3d at 813 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)); *Mackey*, 443 U.S. at 10. In answering this question we consider a number of factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mackey*, 443 U.S. at 10 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). As to the first factor, a driver's interest in continued possession and use of his license pending the outcome of a suspension hearing is substantial, *Mackey*, 443 U.S. at 11, and this would seem to be especially true where, as here, the grounds for suspension arise from acts committed not by the lawful license holder but by an identity thief. As to the second factor,

4

Illinois' post-suspension hearing procedure has been declared constitutional by both the Supreme Court and the Seventh Circuit, *see Dixon v. Love*, 431 U.S. 105 (1977); *Burgess v. Ryan*, 996 F.2d 180, 183 (7th Cir. 1993), despite the recognition of the very flaw in the system that has led us here today: the risk that reports of the convictions upon which the suspension is based may be erroneous. As noted in *Burgess*, the *Dixon* Court held that that risk was low – not zero, but low, 996 F.2d at 183, and apart from his own case Smith has not shown that the risk has materially increased since *Dixon*.[1] Conversely, the cost of tinkering with the system to alleviate that low risk is high: if we required Illinois to hold the hearing before suspending licenses, society could potentially pay a high price for keeping dangerous drivers on the roads while the suspension process crawls along. And if we required Illinois to conduct a pre-suspension examination and investigation into every out-of-state conviction report, we would be undermining both full faith and credit principles and the Interstate Driver License Compact. This last point goes to the third factor as well.

Based on our analysis of the above factors, it is tempting to say, as the Secretary urges, that Illinois provides, and Smith received, all the process that is due under the Constitution: Illinois provides a remedy for Smith to challenge the erroneous suspension of his license, and higher courts than this have held that remedy to be constitutional. But, as the procedural history of this case shows, that process is of absolutely no use to someone like Smith, whose license was wrongfully suspended because of tickets issued by states other than Illinois. As the Secretary of

---

[1] Indeed, currently the risk of erroneous deprivations based on identity theft is likely lower than when Smith's identity was stolen, because the Secretary of State has implemented anti-fraud measures such as the archiving of digitized photographs of license holders, a step which provides a readily available database that can then be cross-checked to prevent an identity thief from obtaining a fake license in the manner done here.

5

State concedes, its hearing officers cannot overrule or question a court judgment without hearing from the court itself. *See* Defendant's Post-Hearing Memorandum, p. 7. This, coupled with the lack of any mechanism for investigating the out-of-state convictions,[2] means that unless the victim of identity theft has the money and the time to investigate the out-of-state convictions on his own, he is almost sure to lose his Illinois license. We think that the scenario Smith presents distinguishes his case from *Dixon* and *Burgess* to the point where he has shown a better than negligible chance of succeeding on his claim. Accordingly, we find that Smith has survived the first hurdle toward a preliminary injunction.

Smith is nonetheless not entitled to an injunction, because he has not shown that he will suffer irreparable harm unless an injunction is issued. In fact, Smith has not shown that he will suffer *any* further harm, at least with respect to his driver's license. The fake license that got Smith into all this trouble in the first place is no longer in the hands of the identity thief (the identity thief surrendered it in connection with a ticket he got in Markham, Illinois, and the officer investigating Smith's identity theft claim retrieved it from the courthouse there), and the out-of-state convictions that led to the suspension orders have all been cleared up. Thus the record does not support Smith's claim of irreparable harm, *see Matta-Ballesteros ex rel. Stolar v. Henman*, 697 F. Supp. 1036, 1038 (S.D. Ill. 1988) (because a preliminary injunction is, by its nature, an extraordinary remedy, a plaintiff must show more than mere speculation of irreparable harm); *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 478 (7th Cir. 2001) (to

---

[2]The Secretary of State has suggested that its fraud unit has the ability to investigate out-of-court convictions once a driver's license holder files a fraud complaint; it argues that Smith's is not the first case the fraud unit has resolved. But there appears to be no set policy or procedure for getting the fraud unit to commit its resources to such an investigation – short of hiring an attorney and filing a lawsuit as Smith did.

6

demonstrate irreparable injury, a plaintiff must show that he will suffer harm that cannot be prevented or fully rectified by the final judgment after trial) (citing *Roland*, 749 F.2d at 386), and Smith's failure to show a risk of irreparable harm requires the Court to deny his request for injunctive relief. *See Signode Corp. v. Weld-Loc Systems, Inc.*, 700 F.2d 1108, 1111 (7th Cir. 1983) (citing *Fox Valley Harvestore v. A.O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976)) (a preliminary injunction is an extraordinary remedy, available only to plaintiffs who carry the burden of persuasion as to all factors).

To support his motion to amend the relief requested, Smith submitted an FBI arrest record generated in a criminal case in Indiana pending against the identity thief. Smith asks the Court to compel the Illinois Secretary of State to tell the FBI and NCIC that Smith was the victim of an identity theft. There are two problems with this request. First, to the extent Smith now has an inaccurate FBI identification record, this lawsuit against the Secretary of State is not the way to fix that record. Congress has enacted regulations governing challenges to the FBI's records, including the NCIC, and those regulations place the burden on Smith to challenge the fake arrest record either in Indiana, which created the arrest record in the first place, or through the FBI directly. *See* 29 C.F.R. §16.34. Smith has an effective means of rectifying the false information, and the Secretary of State's failure to establish a separate procedure for cleaning up the FBI's records does not amount to a due process violation. Second, the future harm Smith is seeking to remedy with his amended relief requested is not an injury that flows from the procedures Smith has challenged in this lawsuit. The property interest Smith has sought to protect here is his interest in maintaining his driver's license; as the Court understands his claim, he challenges the erroneous deprivation of that interest through the suspension procedures implemented by the

state. The fake arrest record and inaccurate NCIC entry certainly have not infringed that property interest, and given the Secretary of State's handling of this matter since Smith filed this lawsuit, another erroneous suspension stemming from the identity theft is highly unlikely (the Secretary already stopped one such erroneous suspension from taking effect).

## Conclusion

For the reasons explained above, the Court denies Smith's motion to amend relief [Docket No. 25-1] and denies Smith's application for a preliminary injunction [Docket No. 14-1]. The case is set for a status hearing on February 14, 2002 at 9:30 a.m.

Dated: January 28, 2002

MATTHEW F. KENNELLY
United States District Judge